**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| **DONNA BROWN** | **:** | **CASE NO.** |
| | **:** | **3:09-cv-10687** |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **R.J. REYNOLDS TOBACCO CO., et al.** | **:** | |

<u>**MEMORANDUM OPINION**</u>

Savage, J.                                                                       June 18, 2015

In its post-trial motion for a new trial or, in the alternative, remittitur, Phillip Morris USA, Inc. ("Phillip Morris") contends that the $9,000,000 punitive damages award is grossly excessive. Thus, according to Phillip Morris, it violates Florida law and the Due Process Clause of the United States Constitution.

We conclude that the punitive damages award is not excessive under federal or Florida law. Nor does it violate Phillip Morris' right to due process. Therefore, we shall deny Phillip Morris' motion.

The decision whether to grant a new trial or remittitur on the grounds of excessive damages is within our sound discretion. *Simon v. Shearson Lehman Bros., Inc.*, 895 F.2d 1304, 1310 (11th Cir. 1990) (citation omitted). As here, where a claim arises under state law, we first look to state substantive law to determine whether the punitive damages award is excessive. *Roboserve, Ltd. v. Tom's Foods, Inc.*, 940 F.2d 1441, 1446 (11th Cir. 1991) (citation omitted). Next, we determine if the award is

excessive under federal law.  *See Peer v. Lewis,* No. 06-60146-CIV, 2008 WL 2047978, at *13 (S.D. Fla. May 13, 2008).[1]

### The Punitive Damages Award Comports with Florida Law

Under Florida law, "[a] defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence."  Fla. Stat. § 768.72(2); *Myers v. Central Florida Investments, Inc.*, 592 F.3d 1201, 1215 (11th Cir. 2010). Under Florida law, a finding that the defendant engaged in fraudulent concealment or participated in a related conspiracy is sufficient to support an award of punitive damages.  *See, e.g., Soffer v. R.J. Reynolds Tobacco Co.,* 106 So.3d 456, 460 (Fla. 1st Dist. Ct. App. 2012) (holding that in *Engle* progeny cases, a plaintiff can recover for punitive damages only on claims for fraudulent concealment or conspiracy to commit fraud); *Knight v. E.F. Hutton and Co., Inc.*, 750 F. Supp. 1109, 1115 (M.D. Fla. 1990). Here, the jury found for Brown on both her fraudulent concealment claim and her conspiracy claim.  *See* Special Verdict Form (Doc. No. 104).

Whether a punitive damages award is excessive in Florida is governed by statute.    Under Florida law, any punitive award in excess of three times the compensatory damages is presumed to be excessive, entitling the defendant to remittitur to that ratio.  Fla. Stat. § 768.73.  However, even in such a case, the plaintiff

---

[1] Rule 59 of the Federal Rules of Civil Procedure provides the trial court with discretion to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal courts."  Fed. R. Civ. P. 59(a).  It is well-settled that a new trial may be warranted by an excessive jury award.  *Johnson v. Clark*, 484 F. Supp. 2d 1242, 1256 (S.D. Fla. 2007).  If the court determines that the finding of liability is supported by the evidence, but the jury award is excessive, remittitur or a new trial limited to the issue of damages is appropriate.  *Simon v. Shearson Lehman Bros., Inc.,* 895 F.2d 1304, 1310 (11th Cir. 1990).  A new trial based on excessive damages should only be ordered if the award shocks the court's conscience.  *Christopher v. Florida*, 449 F.3d 1360, 1368 (11th Cir. 2006) (citing *Shearson*, 895 F.2d at 1310).

may persuade the court that the facts and circumstances of the case, proven by clear and convincing evidence, justify a higher ratio. Here, the ratio does not come close to the presumptive excess limit. Therefore, we proceed to analyze the reasonableness of the award under § 768.74(5).

Section 768.74(5) sets out criteria to assess the reasonableness of a punitive damages award. It requires a court to ask whether: (1) the amount awarded reflects prejudice, passion or corruption on the part of the trier of fact; (2) it appears that the trier of fact ignored the evidence in reaching a verdict or misconceived the merits of the case relating to the amounts of damages recoverable; (3) it appears the trier of fact considered improper elements or arrived at the amount of damages by speculation or conjecture; (4) the award bears a reasonable relation to the amount of damages proved and the injury suffered; and, (5) the award is supported by the evidence and is one that could be adduced in a logical manner by reasonable persons. Fla. Stat. § 768.74(5); *see also Myers*, 592 F.3d at 1215 (stating that a trial court must consider the factors set out in § 768.74(5) when assessing the excessiveness of a punitive award). The § 768.74(5) inquiry must be conducted to ensure that "the manifest weight of the evidence does not render the amount of punitive damages assessed out of all reasonable proportion to the malice, outrage, or wantonness of the tortious conduct." *Id.* (citing *Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246, 1263 (Fla. 2006)). The award must also be reviewed to determine that it bears some relationship to the defendant's ability to pay. *Id.* (citations omitted).

Section 768.74 did not displace Florida's longstanding deference to a jury's damages assessment. *Johnson v. Clark*, 484 F. Supp. 2d 1242, 1256-57 (M.D. Fla.

2007) (citing *Aurbach v. Gallina*, 721 So.2d 756, 758 (Fla. 4th Dist. Ct. App. 1998));
*Slip-N-Slide Records, Inc. v. TVT Records, LLC*, No. 05-21113-CIV, 2007 WL 3232274,
at *21 (S.D. Fla. Oct. 31, 2007) (citation omitted).   A court should not declare a jury
verdict excessive simply because it is higher than the amount the court itself considers
appropriate.   *Clark*, 484 F. Supp. 2d at 1257.   The award will not be disturbed "unless it
is so inordinately large as obviously to exceed the maximum limit of a reasonable range
within which the jury may properly operate."   *Normius v. Eckerd Corp.*, 813 So.2d 985,
988 (Fla. 2d Dist. Ct. App. 2002) (citation omitted).   If the award exceeds the maximum
reasonable range, it should be reduced to the highest amount the jury could have
properly awarded to the prevailing party.   *Rety v. Green*, 546 So.2d 410, 420 (Fla. 3d
Dist. Ct. App. 1989) (citation omitted).

Applying these standards, we conclude that the jury award of $9,000,000 in
punitive damages is not excessive under Florida law.   The award was not the result of
passion, prejudice or corruption.   Rather, it reflected the jury's reasonable consideration
of the evidence presented at trial.   The evidence demonstrated that Phillip Morris
intentionally and purposefully geared its advertising to attract and addict teenagers to
smoking its brand and that its ads influenced Brown to start smoking at the age of 15.
Tr. 1542:2-17; 732:14-19; 689:24-690:3.   Further, Phillip Morris engaged in decades-
long public misrepresentations, maintaining that smoking was not harmful and that
cigarettes were not addictive.    Tr. 786:23-787:18; 788:10-14.    It persisted in a
successful public relations campaign, in conjunction with other entities such as the
Tobacco Industry Research Committee, to counter research concluding that smoking
was harmful, even though it knew it was.   Tr. 612:20-613:15; 629:17-631:15.

The jury did not ignore evidence and did not consider improper elements.  The award was appropriate in light of Brown's injuries. The evidence at trial included evidence that Brown's smoking caused her peripheral vascular disease, resulting in two above-the-knee leg amputations.  Tr. 223:15-224:21.  Because the jury chose to accept Brown's evidence and to reject Phillip Morris' evidence does not mean the verdict was illogical or without a reasonable basis.

The punitive damages award will not lead to Phillip Morris's bankruptcy or financial ruin.  Indeed, it does not make this argument.  As stipulated at trial, Phillip Morris' net worth was $3,609,000,000.  Accordingly, the award bears a reasonable relationship to its ability to pay.

The award was neither excessive nor unreasonable under Florida law. Therefore, unless it violates federal law, the punitive damages award will stand.

### The Punitive Damages Award Is Not Excessive Under Federal Law

The Due Process Clause of the Fourteenth Amendment prohibits imposing "grossly excessive or arbitrary punishments" on civil defendants.  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) (citation omitted).  In determining whether an award of punitive damages is grossly excessive, we consider the following three "guideposts": "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the [factfinder] and the civil penalties authorized or imposed in comparable cases." *Id.* at 418 (citation omitted).

The degree of reprehensibility of the defendant's conduct is the most important consideration in determining the appropriateness of a punitive award. *Id.* at 419. The following factors are relevant to the reprehensibility analysis: (1) was the harm physical or economic; (2) did the defendant's conduct show an indifference or reckless disregard for the health or safety of the plaintiff; (3) was the target of the defendant's conduct financially vulnerable; (4) was the defendant's conduct an isolated incident or part of repeated actions; and (5) was the harm caused by intentional malice, trickery, or deceit, or was it merely the result of negligence. *Id.* The existence of any one of these factors does not necessarily sustain an award of punitive damages, but the "absence of all of them renders any award suspect." *Id.*

Here, at least four factors favor imposing punitive damages. First, regarding the nature of the harm, Brown suffered a physical injury, peripheral vascular disease, which led to the amputation of both of her legs. The harm was clearly physical, having significant economic consequences.

As to the second factor, there was abundant evidence that Phillip Morris' conduct demonstrated an indifference and reckless disregard for Brown's health or safety. For decades, Phillip Morris concealed the harmful and addictive nature of cigarettes despite its knowledge that they were harmful to cigarette smokers. Phillip Morris knew that cigarette smoking caused various illnesses, including cancer and cardiovascular disease. It was also aware that nicotine cigarettes were addictive. Tr. 786:23-787:18. For decades, in a successful public relations campaign, Phillip Morris denied that cigarettes were harmful or addictive. Tr. 786:23-787:18. It also created a false controversy contradicting scientific research that concluded that cigarettes posed

serious health risks, misleading the public into doubting the scientific evidence. Tr. 612:20-613:15; 629:17-631:25.  In light of this evidence, the second reprehensibility factor favors the imposition of punitive damages.

There is no evidence that Brown was financially vulnerable.  Therefore, the third factor does not enter the calculation.

The fourth reprehensibility factor, the defendant's repeated conduct, weighs against Phillip Morris.  Its conduct was not isolated.  Indeed, Phillip Morris repeatedly denied that its cigarettes were addictive.  It did more.  It created a false controversy about whether its cigarettes caused illnesses.  Its advertising campaigns and its denial of the deleterious effects of smoking cigarettes spanned decades.

The last factor, whether the misconduct was intentional or negligent, weighs in favor of awarding punitive damages.  Phillip Morris' conduct certainly was not negligent. The evidence demonstrated that Phillip Morris concealed the harmful nature of its cigarettes, even when its own people acknowledged that they were harmful.  It engaged in deceitful conduct when it concealed its research results and purposefully misled the public.

Considering that the reprehensibility factors weigh in favor of Brown and against Phillip Morris, we conclude that Phillip Morris' conduct was reprehensible for purposes of determining the appropriateness of punitive damages.

The second guidepost is a comparison of the amounts of the compensatory and punitive damages.  The ratio must be reasonable.  *BMW of N. Am. Inc. v. Gore*, 517 U.S. 559, 583 (1996).  However, there is no "mathematical bright line" as to the proper

ratio between punitive and compensatory awards.  *Id.*  Awards that have a single digit ratio are more likely constitutional.  *State Farm*, 538 U.S. at 425.

Brown was awarded $8,287,448 in compensatory damages and $9,000,000 in punitive damages.[2]  The ratio of punitive to compensatory damages awarded to Brown is 1.08 to 1.  Given Brown's severe injury, and the defendant's continuous and fraudulent conduct in denying that cigarettes were harmful or addictive and then creating false doubt as to their harmful effects to combat research to the contrary, we conclude that the single digit ratio of 1.08 to 1 is not excessive and comports with the Due Process Clause.

Citing *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008), Phillip Morris argues that because Brown received a substantial compensatory award of $8,287,448, a ratio of one to one is the appropriate ratio.  The *Exxon* Court limited the ratio of a punitive damages award to the compensatory damages award to one.  *Id.* at 513.  However, *Exxon* concerned maritime law, not the propriety of punitive damages under the Due Process clause.  *Id.* at 501-02 ("Today's enquiry differs from due process review because the case arises under federal maritime jurisdiction, and we are reviewing a jury award for conformity with maritime law, rather than the outer limit allowed by due process . . . . ").  Further, the Supreme Court limited its holding to the facts of the case, *see id.* at 513 (stating that "a 1:1 ratio is a fair upper limit in *such maritime cases*") (emphasis added), and did not disturb its holding in *State Farm*, which emphasized that the appropriate ratio must be determined by the facts and circumstances of the defendant's conduct and the plaintiff's injury.  *State Farm*, 538 U.S. at 425.

---

[2] *See* Jury Verdict Form at ECF 3-4 (Doc. No. 104).

The third and final guidepost looks to the disparity between the punitive damages award and the civil or criminal penalties imposed in comparable cases.   Here, the punitive damages award is in line with, and in some instances, much less than the punitive damages awarded in comparable *Engle* progeny cases.   *See, e.g.*, *Lorillard Tobacco Co. v. Alexander*, 123 So. 3d 67 (Fla. 3d Dist. Ct. App. 2013) ($25 million); *R.J. Reynolds Tobacco Co. v. Martin,* 53 So. 3d 1060 (Fla. 1st Dist. Ct. App. 2010) ($25 million); *Phillip Morris USA, Inc. v. Kayton*, 104 So. 3d 1145 (Fla. 4th Dist. Ct. App. 2012) ($16 million).   Accordingly, the third guidepost does not warrant a finding that the punitive damages awarded to Brown are excessive.

The punitive damages award was not excessive under Florida law or federal law. Nor is it unconstitutional.   Therefore, there is no reason to disturb the award.

### Phillip Morris's Other Arguments Are Without Merit

Phillip Morris' argument that, given the substantial compensatory award, the punitive damages award is not necessary to deter it in the future misses the point. Indeed, the purpose of punitive damages is not only to punish the defendant, but to deter similar conduct by the defendant as well as others in the future.   *Johns-Manville Sales Corp. v. Janssens*, 463 So. 2d 242, 247 (Fla. 1st Dist. Ct. App. 1984) (citation omitted); *Myers*, 592 F.3d at 1216.

Phillip Morris' contention that it should not be subject to the punitive damages award because the policies at issue were carried out by people no longer associated with the company is specious.   Despite its citation to a concurring opinion in which a judge suggested as much, *see Baione v. Owen-Illinois, Inc.*, 599 So. 2d 1377, 1378, 1380 (Fla. Dist. Ct. App. 1992), Phillp Morris' argument has been rejected by Florida

courts.  *See, e.g., Janssens*, 463 So. 2d at 252.   Indeed, accepting this proposition would devise a perpetual shield for corporations, who could, upon being sued, escape exposure to punitive damages by ensuring that any wrongdoers are no longer associated with them.   Furthermore, the current management continues to dispute its underlying liability, leading a reasonable jury to conclude that Phillip Morris will do what it can to place profits over safety and health.  Despite regulation, Phillip Morris and other cigarette manufacturers could violate the law or find ways around it.  Thus, deterrence remains a significant consideration.

The passage of time does not eliminate the basis for an award of punitive damages.  The corporation still exists.  It was built on profits made over decades, a time during which it engaged in the conduct that caused Brown's injuries.   A punitive damages award to punish a defendant for its wrongful misconduct as well as to deter others is, under appropriate circumstances, not precluded because time has passed since the misconduct occurred.

Without offering any evidence beyond pure speculation, Phillip Morris states that the jury awarded punitive damages to Brown based on harms Phillip Morris caused to non-parties.   The court instructed the jury that, in exercising its discretion to award punitive damages, it could not "consider injuries to persons other than Ms. Brown or conduct of others that did not cause Ms. Brown's peripheral vascular disease." Tr. 1726:12-22.[3]  The jury is presumed to follow the court's instructions.  *United States v. Duperval*, 777 F.3d 1324, 1332 (11th Cir. 2015) (citation omitted).

_____

[3] To the extent Phillip Morris suggests that the punitive damages award is improper because it is faced with the prospect of punitive awards in other *Engle* progeny cases, we reject this argument.  In assessing the excessiveness of a punitive award, we are limited to this case.  We will not consider Phillip Morris' potential future liability in other cases.  *See, e.g.*, *R.J. Reynolds Co. v. Townsend*, 90 So.3d 307,

**Conclusion**

The punitive damages award is not excessive under Florida law and does not offend the Fourteenth Amendment.  It is reasonable.  Therefore, we shall deny Phillip Morris' motion for a new trial or, in the alternative, remittitur.

---

(continued) 313 (Fla. 1st Dist. Ct. App. 2012); *R.J. Reynolds Tobacco Co. v. Martin*, 53 So. 3d 1060, 1072 (Fla. 1st Dist. Ct. App. 2010).