IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| **DONNA BROWN** | : | **CASE NO.** |
| | : | **3:09-cv-10687** |
| | : | |
| v. | : | |
| | : | |
| **R.J. REYNOLDS TOBACCO CO., et al.** | : | |

### MEMORANDUM OPINION

Savage, J.                                                                                                          June 18, 2015

In its post-trial motion seeking judgment as a matter of law or a new trial on the fraudulent concealment and conspiracy claims, the defendant Phillip Morris USA, Inc. ("Phillip Morris") challenges the jury verdict finding that it caused the plaintiff Donna Brown's peripheral vascular disease ("PVD"). Phillip Morris contends that no reasonable jury could have found for Brown on her fraudulent concealment and conspiracy to commit fraud claims because there was no evidence that she detrimentally relied on any statement or omission that it had made. It also argues that the jury verdict is against the weight of the evidence.

There is ample evidence to support the jury's finding that Brown detrimentally relied on material statements and omissions made by Phillip Morris. Therefore, we shall deny Phillip Morris' motion for judgment as a matter of law on the fraudulent concealment and conspiracy claims.

### Fraudulent Concealment

Misconstruing and ignoring evidence, Phillip Morris contends that the only evidence of reliance Brown produced was that she recalled seeing an advertisement of

"a guy with a hat," and that she began smoking because her friends smoked and she enjoyed it. Phillip Morris argues that this evidence is insufficient to demonstrate that Brown detrimentally relied on any statement it had made.

In an *Engle*[1] progeny action, detrimental reliance can be established by direct and indirect evidence. *R.J. Reynolds Tobacco Co. v. Martin*, 53 So. 3d 1060, 1069 (Fla. 1st Dist. Ct. App. 2010). The jury may infer detrimental reliance from evidence that the tobacco companies engaged in "pervasive misleading" advertising campaigns and created a false controversy with the intent to create doubt about the harmful health effects of smoking. *Id.; Burton v. R.J. Reynolds Tobacco Co.,* 208 F. Supp. 2d 1187, 1203 (D. Kan. 2002) (jury could infer reliance where evidence showed tobacco company and co-conspirators, despite evidence of cigarettes' harmful effects, "engaged in a publicity campaign telling the public that whether there were negative health consequences from smoking remained an 'open question.'").

Here, the record contains sufficient evidence from which a reasonable jury could conclude that Brown reasonably relied on Phillip Morris to disclose the addictive nature of cigarettes and the harmful nature of smoking. Brown presented overwhelming evidence that Phillip Morris intentionally and calculatedly geared its advertising to attract and hook teenagers to smoking its brand while hiding the addictive nature of its cigarettes.

When Brown started smoking at the age of fifteen, it was commonplace to see people smoking everywhere. Tr. 934:15-19. Both her parents smoked cigarettes. Tr.

---

[1] *Engle v. Ligget Grp., Inc.*, 945 So. 2d 1246 (Fla. 2006).

927:4-7. At the time, Brown did not know that smoking was harmful to health or that cigarettes were addictive. Tr. 941:8-17. Nor did she have any intention of becoming a lifelong smoker. Tr. 941:5-7. She testified that Marlboro cigarettes, manufactured by Phillip Morris, were the "in" brand among her and her peers. Tr. 939:10-15. When Brown started buying her own cigarettes, she selected Marlboro cigarettes because other kids were smoking that brand and the image invoked by the Marlboro Man influenced her. Tr. 1542:2-17. Essentially, her testimony proved how successful the Phillip Morris advertising campaigns were in developing and ensuring brand loyalty.

     Publicly, Phillip Morris maintained that it did not target smokers under the age of eighteen. Tr. 732:10-14. In reality, Phillip Morris employed other companies to study underage smokers and determine why they smoked. Tr. 732:14-19. It targeted young people because it knew that attracting smokers while they were young would lead to increased profits. Tr. 686:19-23. An internal Phillip Morris memorandum instructed that it was critical to garner as much knowledge as possible about teenage smokers, who were "tomorrow's potential regular customer[s]" and stated that most smokers took up smoking in their teenage years. Tr. 689:24-690:3. Phillip Morris had determined that young smokers liked to smoke cigarettes because it made them look older, helped them fit in with their friends and conveyed a sense of rebellion against authority figures. Tr. 725:11-726:3. It knew that young people wanted cigarettes to convey what they saw as the proper image. Tr. 726:4-6. The Marlboro ads, including the iconic Marlboro Man, which Brown identified as what attracted her to smoking, were very successful in presenting the "right image" for minors. Tr. 726:7-10. The Marlboro Man is the most

3

popular image associated with Marlboro. Tr. 721:18-21. It resonated with young people generally, and with Brown specifically, because it presented a man who was quintessentially American: rugged, attractive and independent. Tr. 721:22-25. Phillip Morris acknowledged that its Marlboro brand was so successful that it became teenagers' preferred brand and remained so into adulthood. Tr. 691:5-10.

Brown became addicted to smoking. Tr. 405:7-16; 945:13-15. After she was diagnosed with PVD in 1992, she tried to quit on several occasions, using any new product that appeared on the market. Tr. 223:15-224:21; 944:8-23. Although motivated to quit, she just could not do it. Tr. 227:6-20; 943:22-944:23; 950:7-19. Brown finally quit smoking in 2014, forty-seven years after she began smoking. Tr. 229:19-22.

The record contains evidence that Phillip Morris knew, starting in the mid-1950s, from a substantial amount of research, cigarette smoking was linked to cardiovascular disease. Tr. 592:11-593:19. Since at least the 1950s, it was aware that nicotine cigarettes were addictive. Tr. 728:10-20; 730:20-25; 788:10-14. In an internal study presented to Phillip Morris' upper management, a physician reported that people began smoking as teenagers for social reasons and continued smoking because of their addiction to nicotine. Tr. 728:10-730:25.

Phillip Morris did not disclose this information to the public. Instead, both on its own and in concert with other cigarette manufacturers and the Tobacco Institute, a public relations and lobbying association formed by the tobacco companies, it represented to the public, in a campaign spanning decades, that cigarettes were not

4


harmful and not addictive. Tr. 786:23-787:18.[2] Working in conjunction with the Tobacco Industry Research Committee ("TIRC"), which was set up to counterattack accusations that smoking caused diseases, Phillip Morris created false doubt among the public. Tr. 612:20-613:15; 629:17-631:25. Based on this evidence, a jury could reasonably conclude that Brown, like so many others, was induced to rely and did so rely, to her detriment, on Phillip Morris to reveal the negative health effects of smoking and its addictive nature.[3]

## Conspiracy

Phillip Morris also argues that Brown's conspiracy claim fails for the same reason her fraudulent concealment claim does. As we have stated, Brown presented sufficient evidence from which a reasonable jury could find that she relied to her detriment on Phillip Morris' acts and omissions, committed with other co-conspirators such as the Tobacco Institute and the TIRC, of withholding information about cigarettes' addictiveness and harmful health effects. The evidence is more than ample to show that Phillip Morris conspired with others to create doubt as to the harmfulness of cigarette smoking.

---

[2] Phillip Morris did not disclose cigarettes' addictive nature from the 1950s through 1994 and concealed their harmful health effects from the mid-1950s until at least 1994. Tr. 786:23-787:18; 788:10-14. In fact, Phillip Morris did not publicly acknowledge that nicotine was addictive until 1999. Tr. 1103:8-16. Therefore, Phillip Morris' claim that Brown did not present evidence of its wrongful conduct after May 5, 1982 is contradicted by the record.

[3] Phillip Morris also argues that it had no duty to disclose information to Brown because it was not in a fiduciary relationship with her. This argument is meritless. Phillip Morris' duty to disclose was established in *Engle*. *See Engle*, 945 So. 2d at 1276-77 (finding that the defendants concealed or omitted material information).

## Conclusion

For the reasons stated, we shall deny Phillip Morris' motion for judgment as a matter of law and its motion for a new trial.